# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: January 24, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2007-SC-000161-WC

MARY HUTCHINS      APPELLANT

           ON APPEAL FROM COURT OF APPEALS
V.                            2005-CA-000350-WC
           WORKERS' COMPENSATION NO. 02-91930

GENERAL ELECTRIC AND
HON. LAWRENCE SMITH,
ADMINISTRATIVE LAW JUDGE      APPELLEES

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Having determined that the claimant's symptoms resulted from age-related degenerative changes rather than a work-related cumulative trauma injury of March 6, 2002, an Administrative Law Judge (ALJ) dismissed her application for benefits. The Workers' Compensation Board found the decision to be supported by substantial evidence and affirmed. The Court of Appeals affirmed, and we affirm.

The claimant was born in 1948, completed one semester of college, and spent most of her adult life working on the defendant-employer's assembly line. On February 27, 2003, she filed an application for benefits, alleging that she sustained a repetitive motion injury to her neck, right arm, and low back on March 6, 2002. The employer denied the claim. Among other things, it contested notice, limitations, whether the alleged accident and injury occurred, causation, and pre-existing disability/impairment.

The claimant had a longstanding history of neck, back, and arm complaints, and she had filed at least two previous workers' compensation claims. The first claim alleged a February 19, 1990, cumulative trauma injury to the neck and right arm from lifting half shelves. It was dismissed for lack of prosecution. The second claim alleged an April 19, 1995, cumulative trauma injury to the low back, causing low back pain that radiated into the hips and legs. An ALJ determined that the claimant sustained a 5% permanent partial occupational disability and awarded benefits.

The claimant acknowledged that she obtained treatment at the employer's medical center in 1999 for pain in her neck, arms, shoulders, and low back after using large air guns. In September 1999 she saw Dr. Guarnaschelli, a neurosurgeon. He noted that she had been treated by Drs. Davis, Dinwiddie, Best, Jelsma, and other physicians for chronic pain since 1988. He noted that her present symptoms included diffuse pain in the neck, mid back, and low back and occasional diffuse pain in the upper arms and legs that did not follow a specific myotomal or dermatomal level. X-rays revealed mild degenerative changes. Dr. Guarnaschelli diagnosed degenerative disc disease and a chronic pain syndrome of the neck and back that was consistent with fibromyalgia. He advised the claimant that she was not a surgical candidate, recommended a more comprehensive rehabilitation program, and released her to return to work. She continued to work until March 6, 2002, the date of the injury that is at issue presently.

The claimant testified that she had worked in a seated position with her head bent downward, installing parts on the bottoms of dishwashers for several months before the alleged injury. The job required her to shoot 4,650 screws per day with an

2

air gun. After it was eliminated, she worked for two or three weeks attaching the water valve onto 1550 dishwashers per day. That job required her to hold the valve with her left hand and attach it with an air gun, then pull a lever down with her right hand and tilt the dishwasher. She described it as being "kinda stressful because the lever was hard to pull down and you had to hold the dishwasher where it would not swing." She stated that had been experiencing symptoms since December 2001 and that while working on March 6, 2002, she felt pain like "a bad electric shock" shoot down her right arm and back. It was "much, much worse" than she had experienced previously. She informed the union steward and went to the dispensary, where she saw a company doctor. Shortly thereafter, she saw Dr. Davis, who took her off work.

The claimant testified that her symptoms spread to her left arm and shoulder after she quit working and that she experienced constant pain and burning in her low back. She testified that Dr. Zhou continued to treat her presently; that that her physicians told her not to work; and that she had difficulty performing her normal household duties. Her income consisted of a disability pension and long-term disability benefits. Her social security disability claim was pending.

The record indicated that the claimant sought treatment from Dr. Davis, her family physician, on March 8, 2002, for complaints of pain in her upper and lower back, right arm, and neck. She reported that she had injured her back at work. Dr. Davis referred her to Dr. Guarnaschelli, who saw her twice.

On April 3, 2002, Dr. Guarnaschelli received a history of several of years of periodic low back pain and of the abrupt onset of low back, neck, shoulder, and right arm pain while performing repetitive lifting and screwing motions at work on March 6,

3

2002. He noted that she reported no other traumatic event and stated, "This is of an aggravating event, and she blames this strictly on the nature of the repetitive work." Dr. Guarnaschelli kept her off work until the next appointment and ordered a metabolic evaluation as well as an MRI of the cervical and lumbar spine. On April 11, 2002, he noted that the metabolic studies were normal but that the MRI revealed multi-level degenerative changes and spondylosis in the cervical and lumbar spine but nothing that warranted surgery. He also noted that the claimant thought the repetitive nature of her work contributed to her condition and that she did not think that she was capable of returning to repetitive work or work requiring heavy lifting due to her pain. He referred her to Dr. Zhou for pain management.

Responding to a request by the employer's insurance carrier, Dr. Guarnaschelli reviewed his records as well as Drs. Zhou's. He reported on September 19, 2002, that the claimant denied a specific traumatic episode and attributed her symptoms to the nature of her repetitive work. He stated that he concurred with Drs. Swirat and Goldfarb that her current symptoms probably resulted from aging and developmental changes related to spondylosis.

Dr. Zhou first saw the claimant on April 19, 2002. She complained of constant pain in her back, neck, arms, and legs, which was much worse since March 6, 2002. Dr. Zhou diagnosed cervical and lumbar degenerative disc disease with radiculitis, myofascial pain, and cervical and lumbar facet arthropathy. He performed epidural nerve blocks and prescribed medications. When completing the medical portion of the claimant's application for pension benefits in May 2002, Dr. Zhou noted that the conditions had been present for several years but had worsened significantly in the past

4

six months.

In August 2003 the claimant's attorney requested opinions from Drs.
Guarnaschelli and Zhou concerning whether her work caused or contributed to her
present condition, either alone or in combination with any pre-existing degenerative disc
disease. Noting that he last saw the claimant on April 11, 2002, Dr. Guarnaschelli
replied:

> I really need to depend on the cause and effect to be
> dependent on the accuracy of the initial patient history and
> interview that she provided for me on April 3, 2002, and
> indeed assuming this is true then the episode which
> occurred at work would appear to be a precipitating event
> superimposed on her chronic and (sic) symptoms for which
> she has been treated in the past.

In a letter dated October 16, 2003, and addressed "To Whom It May Concern,"
Dr. Zhou stated that repetitive work can accelerate degenerative changes and that the
claimant's work "probably is related to her complaints." In his opinion, oral medication
and periodic epidural nerve blocks remained her best choice of treatment.

Drs. Bizot and Swirat were members of the employer's medical staff. They
reviewed company medical records and diagnosed chronic, non-work-related cervical
degenerative disc disease, noting that the claimant had reported symptoms of three
years' duration in August 1999. Dr. Bizot stated that the degenerative condition
resulted primarily from the natural aging process. Dr. Swirat stated that degenerative
disc disease of the spine occurs and worsens with time but is not a repetitive motion
disorder. He also stated that the condition may produce periods of more intense
symptoms without provocation. Thus, he was not surprised that it had become more
symptomatic given the amount of time that had passed since the previous complaints.

5

In his opinion, the claimant's work neither caused nor aggravated the condition.

Dr. Schiller performed an independent medical evaluation for the employer in July 2003. He examined the claimant and reviewed medical records, reports from Drs. Guarnaschelli and Davis, and diagnostic studies. He noted that the claimant gave a history of experiencing low back pain on the job since 1995 but of no specific injury. She stated that she missed work for eight weeks in 1995 and that she received chiropractic treatment from 1995 through 1999. She also gave a history of experiencing neck pain in 1999, which she did not relate to an acute injury, and of experiencing pain in the interscapular region, shoulder, and arm. Dr. Schiller stated that she did not meet the diagnostic criteria for fibromyalgia. He found nothing wrong with her neck or back other than the age-related degenerative changes that were documented on the x-rays and MRI scans. He noted that her subjective complaints of pain were not consistent with the physical examination.

When deposed, Dr. Schiller testified that he took a history from the claimant and reviewed the reports of diagnostic tests performed after the alleged injury. He also reviewed records from Drs. Davis and Guarnaschelli, including Dr. Guarnaschelli's report noting complaints of an abrupt onset of low back, arm, shoulder, and neck pain while at work on March 6, 2002. Dr. Schiller acknowledged that the report indicated that the claimant's condition was symptomatic at that time but noted that it did not state that she sustained an injury. He acknowledged that repetitive motion can cause certain types of injuries such as carpal tunnel syndrome but explained that the claimant had a different type of condition, degeneration throughout the spine. He stated that a person with the amount of degeneration that was evident on her x-rays would be prone to

6

having symptoms "playing ping pong, reading a book at home or working." In his opinion, her complaints were a continuation of those that began in 1988. They resulted from degenerative changes due to aging, and her work neither hastened nor aggravated the underlying degenerative condition.

The ALJ determined that the claimant's symptoms resulted from degenerative changes due to the aging process rather than work-related trauma or cumulative trauma, noting that most of the physicians had reached that conclusion. After the claimant's petition for reconsideration was denied, she appealed unsuccessfully to the Board and the Court of Appeals. Relying on Cepero v. Fabricated Metals Corp., 132 S.W.3d 839 (Ky. 2004), she continues to argue that Dr. Schiller's opinion of causation was based on an incomplete and inaccurate history as evidenced by his failure to mention the March 6, 2002, injury in his report. She asserts, therefore, that the ALJ erred by failing to rely on the "far more credible" opinions of Drs. Zhou and Guarnaschelli that she suffered an event at work that aggravated an underlying spinal condition into disabling reality.

KRS 342.0011(1) provides, in pertinent part, as follows:

> "Injury" means any work-related traumatic event or series of
> traumatic events, including cumulative trauma, arising out of
> and in the course of employment which is the proximate
> cause producing a harmful change in the human organism
> evidenced by objective medical findings. "Injury" does not
> include the effects of the natural aging process . . . .

Among the contested issues before the ALJ were causation, the statute of limitations, and pre-existing active disability. The claimant had the burden to prove every element of her claim, including that she sustained a harmful change in the human organism due to work-related trauma. Because KRS 342.285 designates the ALJ as

7

the finder of fact, with the sole discretion to weigh the evidence, the ALJ may determine the quality, character, and substance of particular evidence, draw reasonable inferences, and decide what evidence to rely upon. Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986), explains that if the party with the burden of proof fails to convince the finder of fact, that party must show on appeal that the favorable evidence was so overwhelming as to compel a favorable finding. The presence of contrary evidence is not sufficient; the party must show that no reasonable person would have failed to be convinced by its evidence.

Cepero v. Fabricated Metals Corp., supra, stands for the principle that a medical opinion regarding causation that is based on a substantially inaccurate or incomplete medical history and unsupported by any other credible evidence cannot constitute substantial evidence. In Cepero, the worker misled a medical evaluator by characterizing as "no big deal" a previous injury that required him to use a wheelchair for two months and that would not have resolved without a surgery that was not performed. Finding in the worker's favor, the ALJ relied on the opinion that was based on the faulty history even though the evaluator later changed the opinion when informed of the correct history. This is not such a case.

Although Dr. Schiller failed to mention the March 6, 2002, incident in his report, the record indicates that he did not fail to consider it. When deposed, he testified that he reviewed Dr. Guarnaschelli's report that noted the abrupt onset of pain while the claimant was working on March 6, 2002. He explained why he was not convinced that the onset of symptoms while the claimant was working showed that work-related trauma caused, hastened, or aggravated the degenerative condition in her spine.

8

Despite the claimant's assertions, his report and deposition were admissible as evidence regarding causation.

The parties presented conflicting evidence regarding the cause of the claimant's present symptoms. Substantial evidence indicated that they resulted from the aging process rather than work-related trauma. Contrary to the claimant's assertions, the evidence from her experts did now show overwhelmingly that her work caused, hastened, or aggravated the degenerative condition, producing her symptoms.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT,
MARY A. HUTCHINS:

ROBERT M. LINDSAY
SEGAL, LINDSAY, JANES & BERRY, PLLC
515 PARK AVE.
LOUISVILLE, KY 40208

COUNSEL FOR APPELLEE,
GENERAL ELECTRIC:

JUDSON F. DEVLIN
FULTON & DEVLIN
BROWENTON PLACE
SUITE 165
2000 WARRINGTON WAY
LOUISVILLE, KY 40222